MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, State Bar No. 83684
JEAN BARNIER, State Bar No. 231683
645 First St. West
Sonoma, California 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email: macclaw@macbarlaw.com

Attorneys for Plaintiff
BR FESTIVALS, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>BR FESTIVALS, LLC<br>a California limited liability company<br><br>　　　　　　Debtor.<br>_____<br>BR FESTIVALS, LLC<br>a California limited liability company<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JASON W. JOHNSON, an individual,<br><br>　　　　　　Defendant.<br>_____ | Case No. 14-10175<br>(Chapter 11)<br><br>AP No.<br><br>**COMPLAINT TO AVOID PREFERENTIAL AND FRAUDULENT TRANSFERS** |

Plaintiff alleges:

<u>JURISDICTION AND VENUE</u>

1. On February 5, 2014, Plaintiff BR Festivals, LLC filed its voluntary petition for relief under Title 11 of the United States Code in the above-entitled Court. Since that time, the Debtor has remained in ownership and management of its property as a Debtor-in-possession.

2. This action is a civil proceeding arising in a case under Title 11 of the United States Code. The United States District Court for the Northern District of California has subject matter jurisdiction over this adversary proceeding pursuant to the provisions of 28 USC § 1334, 11 USC §§ 547 and 548. The District Court has referred jurisdiction of this adversary proceeding to the United States Bankruptcy Court for the Northern District of California pursuant to its General Order 24. Venue is proper here pursuant to the provisions of 28 USC § 1409.

3. This matter is a "core" proceeding as defined by 28 USC § 157(a)(2)(A), (F), (H), and (O). Plaintiff consents to final judgment of the Bankruptcy Court pursuant to the provisions of 28 USC § 157(c)(2).

## PARTIES

4. At all relevant times, the Debtor has been a limited liability company organized and existing under the laws of the State of California.

5. Defendant Jason W. Johnson is an individual residing and doing business in the State of California. At the time of the avoidable transfers alleged in this Complaint, Defendant Johnson was a Manager and 35% Member of the Debtor. Defendant was therefore an "Insider" as the term is defined by 11 USC § 101(31).

## GENERAL ALLEGATIONS
### The Capitalization of BR Festivals, LLC

6. On or about December 12, 2012, Defendant Johnson and the other Members and Managers of the Debtor executed an "Amended and Restated Operating Agreement of BR Festivals, LLC", a correct copy of which is attached to this Complaint and labeled Exhibit 1 (the "Operating Agreement"). At or about the time of the Operating Agreement, Defendant Johnson made a capital contribution of $1,000,000 to the Debtor in consideration for his LLC Membership and appointment as a Manager.

7. Among other things, Section 5.4 of the Operating Agreement provided that Defendant Johnson would have a first right of refusal to make any cash loans required by the Debtor, with interest to accrue at 10% per annum. Section 5.54 purported to give Defendant Johnson the right to withdraw his capital contribution on June 30, 2013 along with a bonus of $250,000.00. Section 10.15 purported to give the Debtor the option to purchase Defendant Johnson's membership interest for $2,000,000 at any time prior to April 30, 2013. Section 6.10 provided that there would be no distribution of capital to any Member "if, after given effect to the Distribution:(a) the Company would not be able to pay its debts as they become due in the usual course of business; or (b) the Company's total assets would be less than the sum of its total liabilties.... ".

8. Following the execution of the Operating Agreement, Defendant Johnson made a working capital loan in the amount of $1,000,000 to the Debtor.

## The Business of the Debtor BR Festivals

9. From and after December 12, 2013, the Debtor engaged in the business of producing and promoting a multi-day music festival in Napa, California known as "Bottlerock", which the Defendant Johnson and the other managing principals of the Debtor anticipated would generate millions of dollars of income and expenses and draw hundreds of thousands of people.

10. To produce and promote this event, and with the active participation of Defendant Johnson, between December 12, 2012 and April 23, 2013, the Debtor engaged approximately 60 music bands at a combined cost of over $7,000,000. Most of this musical talent required substantial cash deposits, and many required 100% deposits, all of which were tendered prior to April 23, 2013.

11. In addition to the musical talent, the Debtor's business required millions of additional dollars to successfully produce, including without limitation (1) facility fees and governmental permit fees of approximately $1,000,000, (2) logistic, rental bus and other transportation costs in excess of $1,000,000, (3) wage and benefit expenses payable to union

stage hands and technicians in excess of $850,000, (4) massive marketing and promotional expenses, and (5) staff overhead.

12. As of no later than April 23, 2013, the total incurred and reasonably anticipated indebtedness to produce the 2013 Bottlerock festival was in excess of $20,000,000.

<u>The Transfer of Critical Cash to Defendant Johnson</u>

13. On or about April 23, 2013, the Debtor paid to Defendant Johnson the cash sum of $3,026,849.32, ostensibly representing (a) return of Defendant Johnson's capital investment, (b) payment of the $1,000,000 bonus to Defendant Johnson reflected in Section 10.15 of the Operating Agreement, and (c) repayment of Defendant Johnson's $1,000,000 loan plus interest.

14. To fund, in part, this payment, on or about April 26, 2013, the Debtor borrowed and incurred secured debt in the amount of $3,000,000 in favor of the 2011 Buss Family Trust and the Keller Family Living Trust.

15. Thus, the net effect of these two transactions was to convert a $1,000,000 equity position and $1,000,000 unsecured debt held by the "Insider" Defendant Johnson into a $3,000,000 secured debt against all assets of the Debtor held by third parties.

16. At the conclusion of these two transactions, the Debtor's assets consisted of prepaid deposits to musical talent and other vendors, trade fixtures and retail merchandise of a modest value, and intellectual property with no liquidation value. At this time, the Debtor was insolvent by at least $10,000,000.

<u>Subsequent Financial Losses</u>

17. Shortly after this $3,026,849.32 payment was made to the "Insider" Defendant Johnson, the Debtor produced the 2013 Bottlerock Festival over 5 days in May, 2013.

18. At the conclusion of the 2013 Bottlerock Festival, the Debtor had generated gross income of approximately $11,200,000, and incurred debts and expenses of approximately $20,000,000. The Debtor had no source of substantial future income and no assets with a significant going concern value.

## FIRST CLAIM FOR RELIEF
(Avoidance of Preferential Transfer)

19  Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 18, inclusive.

20.  On no earlier than April 23, 2013, a date within one year of the filing of the petition for relief by Plaintiff, the Debtor transferred the sum of $3,026,849.32 to Defendant Johnson. These sums were property of the Debtor.

21  Of this aggregate transfer, the sum of $1,026,849.32 was made on account of an antecedent debt owed by the Debtor to Defendant Johnson arising out of his working capital loan to the Debtor.

22  This transfer was made to an "Insider" within one year of the filing of the petition for relief.

23  This transfer was made at a time when the Debtor was insolvent.

24  This transfer would enable the Defendant Johnson to receive a greater distribution than similarly situated creditors in a case under Chapter 7 of the Bankruptcy Code had the transfer never been made.

25  Plaintiff is therefore entitled to avoid and recover this $1,026,849.32 transfer to the Defendant Johnson pursuant to the provisions of 11 U.S.C. § 547, and preserve this transfer for the benefit of the estate pursuant to the provisions of 11 U.S.C. §550.

WHEREFORE, plaintiff prays for judgment as set forth below.

## SECOND CLAIM FOR RELIEF
(Avoidance of Constructive Fraudulent Transfer – 11 U.S.C. § 548 )

26  Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 25, inclusive.

27.  On no earlier than April 23, 2013, a date within two years of the filing of the

petition for relief by Plaintiff, the Debtor transferred the sum of $3,026,849.32 to Defendant Johnson. These sums were property of the Debtor.

28  Of this aggregate transfer, the sum of $2,000,000 paid to the Defendant Johnson in exchange for his $1,000,000 capital contribution to the Debtor as an equity security holder in the Debtor, plus the $1,000,000 bonus specified in Section 10.15 of the Operating Agreement.

29. At the time of this transfer, the Debtor was insolvent, or rendered insolvent by the transfer.

30. At the time of this transfer, the Debtor was left with an unreasonably small capitalization. Among other things, the Debtor had no remaining equity capital and was obligated to promote and produce an event which generated a loss of approximately $8,000,000.

31. At the time of this transfer, the Debtor had incurred, or intended to incur, debts beyond their ability to pay as they matured, including without limitation the expenses of completing the 2013 Bottlerock Festival as described above.

32. This transfer were not made in exchange for fair consideration. The return of capital by a California limited liability company to a Member at a time when it is insolvent, unreasonably capitalized, or unable to pay its debts as they become due, is inherently unfair and illegal under the laws of the State of California.

33. Plaintiff is therefore entitled to avoid and recover this $2,000,000 transfer pursuant to the provisions of 11 U.S.C. § 548(a)(1)(B), and preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### THIRD CLAIM FOR RELIEF
(Avoidance of Constructive Fraudulent Transfer – 11 U.S.C. § 544)

34. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 33, inclusive.

35. Among the rights and powers of Plaintiff as the duly acting Debtor-in-possession of this Estate are all of the avoidance rights of actual creditors of the Debtor existing as of the filing of the petition for relief and all of the rights and powers of hypothetical execution and judgment lien creditors of the debtor as of the filing of the petition for relief.

36. On no earlier than April 23, 2013, a date within two years of the filing of the petition for relief by Plaintiff, the Debtor transferred the sum of $3,026,849.32 to Defendant Johnson. These sums were property of the Debtor.

37 Of this aggregate transfer, the sum of $2,000,000 paid to the Defendant Johnson in exchange for his $1,000,000 capital contribution to the Debtor as an equity security holder in the Debtor, plus the $1,000,000 bonus specified in Section 10.15 of the Operating Agreement.

38. At the time of this transfer, the Debtor was insolvent, or rendered insolvent by the transfer.

39. At the time of this transfer, the Debtor was left with an unreasonably small capitalization. Among other things, the Debtor had no remaining equity capital and was obligated to promote and produce an event which generated a loss of approximately $8,000,000.

40. At the time of this transfer, the Debtor had incurred, or intended to incur, debts beyond their ability to pay as they matured, including without limitation the expenses of completing the 2013 Bottlerock Festival as described above.

41. This transfer were not made in exchange for fair consideration. The return of capital by a California limited liability company to a Member at a time when it is insolvent, unreasonably capitalized, or unable to pay its debts as they become due, is inherently unfair and illegal under the laws of the State of California.

42. As of the petition date, there existed actual creditors with the rights and powers under the laws of the State of California to avoid these transfers, and to obtain a writ of attachment against the transferred monies, pursuant to the provisions of California Civil Code §§ 3439 et seq.

43. Plaintiff is therefore entitled to have these transfers avoided pursuant to the provisions of 11 U.S.C. § 544, and preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551.

WHEREFORE, Plaintiff prays for judgment as follows:

1. For an order avoiding the transfers to Defendant Johnson alleged above, and preserving these transfers for the benefit of the Estate;

2. For damages against Defendant Johnson in the amount of $ 3,026,849.32, according to proof, with interest thereon at the legal rate;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems proper.

Dated: February 6, 2014        MacConaghy & Barnier, PLC

/s/ John H. MacConaghy
John H. MacConaghy
*Attorneys for Plaintiff*
*BR Festivals, LLC*